WESTERN SMELTING & REFINING CO., APPELLEE, v. FIRST NATIONAL BANK OF OMAHA, APPELLANT.

35 N. W. 2d 116

Filed December 3, 1948. No. 32368.

478

*Finlayson, McKie & Kuhns,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda, Lawrence J. Tierney,* and *Leo Eisenstatt,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Western Smelting & Refining Company filed a prior action, still pending in the district court for Douglas County, against Metal Manufacturing Corporation and the First National Bank of Louisville, Kentucky, to recover damages for alleged breach of contract by Metal Manufacturing Corporation in failing to deliver certain aluminum. Since Metal Manufacturing Corporation was

resident in Kentucky and had no agent in Nebraska, Western Smelting & Refining Company caused a writ of attachment and garnishment to be issued and served upon the First National Bank of Omaha, claiming that it had moneys in its possession belonging to the Metal Manufacturing Corporation.

The First National Bank of Omaha, as garnishee, answered in substance that it had received for collection, in the regular course of business from the First National Bank of Louisville, a certain draft in the sum of $19,374.35, drawn by the Metal Manufacturing Corporation to its own order against the Western Smelting & Refining Company, bearing the blank endorsement of the payee and the endorsement of the Louisville bank "PAY TO THE ORDER OF ANY BANK OR BANKER ALL PRIOR ENDORSEMENTS GUARANTEED"; that the draft had been paid on October 2, 1946, and the proceeds were in possession of garnishee; that the First National Bank of Louisville, being last endorser and having forwarded the draft to the First National Bank of Omaha with instructions to collect the same and remit the proceeds to it, was the party to whom garnishee was indebted for such proceeds; that it had no knowledge of any interest of Metal Manufacturing Corporation; and prayed for dismissal as garnishee and recovery of costs. Thereupon the court entered an order that garnishee held said funds as property of the First National Bank of Louisville.

Plaintiff did not appeal therefrom, but some six months later filed its petition in the present action against defendant, First National Bank of Omaha, under sections 25-1030 and 25-1031, R. S. 1943, alleging that garnishee's aforesaid "disclosures were not satisfactory to the plaintiff," because "in truth, and in fact, the said proceeds of said draft were the property of the Metal Manufacturing Corporation, for the reason that said First National Bank of Louisville, Kentucky was a mere agent of collection for the said Metal Manufacturing Corpora-

tion" and that the answer of defendant in garnishment was accordingly "false and incomplete." Plaintiff prayed judgment against defendant for $19,374.35, and costs.

Defendant's answer to plaintiff's petition, after denying generally, alleged in substance that its original answer in garnishment, attaching copy thereof, was in all respects true and complete, upon the basis of its then knowledge and information; specifically denied that its answer was false and incomplete; and prayed for dismissal and costs.

After a hearing upon the merits, the trial court entered its order, denominated a judgment, finding generally for plaintiff and against defendant, specifically finding that defendant's answer in garnishment was incorrect and incomplete; that defendant had in its possession $19,374.35 belonging to Metal Manufacturing Corporation subject to garnishment in the original action theretofore brought by plaintiff; and that said funds should be so held by defendant until further order of the court pending the outcome of that action. The court by its order then adjudged that defendant "is hereby ordered and directed to hold the sum of $19,374.35, which sum belongs to, and the title of which is hereby determined to be in, the Metal Manufacturing Corporation subject to the garnishment proceedings in the case of Western Smelting & Refining Co. v. Metal Manufacturing Corporation and the First National Bank of Louisville, Kentucky, Docket 399, Page 316, in the District Court of Douglas County, Nebraska, and either to hold and retain said sum of money as garnishee subject to the outcome of said latter separate action in garnishment and attachment and until further order of the District Court of Douglas County, Nebraska, or to pay said sum into Court and thereupon upon such payment be discharged as garnishee."

Defendant's motion for new trial was overruled, and it appealed to this court, assigning substantially that: (1) The trial court erred in the admission of certain

evidence over defendant's objections; and (2) generally that the findings and judgment were contrary to law and not sustained by the evidence. We sustain the last assignment.

Hereinafter, Western Smelting & Refining Company will be designated as plaintiff; the First National Bank of Omaha as defendant; the Metal Manufacturing Corporation as the company; and the First National Bank of Louisville, Kentucky, as the Louisville bank or the bank.

At the outset, we are required to dispose of plaintiff's motion to dismiss the appeal substantially upon the grounds that: (1) Defendant was not the party actually appealing, because the Louisville bank was paying the expense thereof; (2) that being a mere stakeholder, defendant had no appealable interest; and (3) that in any event the findings and adjudication of the trial court was not yet a final order from which an appeal could be taken by reason of section 25-1031, R. S. 1943.

Plaintiff cites no authority sustaining its first contention, and we conclude that it has no merit. As stated in the introductory note, Restatement of the Law, Agency, vol. 2, p. 999: "Correlative with the duties of the agent to serve loyally and obediently are the principal's duties of compensation, indemnity, and protection." Also, in section 417, p. 961, comment c, it is said: "An agent who, within the scope of his authority, has innocently received the possession of or title to goods or other things, and against whom action is brought by a third person claiming rights antagonistic to the principal, may notify the principal and offer him an opportunity to defend; for the effect upon the mutual rights of principal and agent when this is done, see Comment e on section 438." In section 438, comment e, p. 1017, it is said: "If suit is brought against the agent upon a disputed claim as to which he is entitled to indemnity from the principal, he may notify the principal to defend, and if the principal fails to do so, the agent is entitled to expenses thereafter reasonably incurred by him in a defense

made in good faith or in a reasonable compromise of the action."

Concededly, a party to an action against whom no judgment or final order has been rendered, cannot prosecute an appeal, but that situation is not presented in the case at bar. An order entered by the court may affect a substantial right and be subject to review as a final order although it could not or need not be properly denominated a judgment. In that regard, section 25-1911, R. S. 1943, provides: "A judgment rendered or final order made by the district court may be reversed, vacated or modified by the Supreme Court for errors appearing on the record."

Section 25-1902, R. S. 1943, specifically provides: "An order affecting * * * a substantial right made in a special proceeding, * * * is a 'final order' which may be vacated, modified or reversed, as provided in this chapter."

In Levin v. Muser, 107 Neb. 230, 185 N. W. 431, this court construed and applied what is now section 25-1902, R. S. 1943, by use of the following language: "In some jurisdictions, it is true, under somewhat similar statutes, an order made in a 'special proceeding,' before it can be appealable, must not only affect a substantial right but must, also, either have the effect of a final order in that proceeding, or prevent a judgment from which an appeal might be taken (3 C. J. 544, sec. 384), but in this state the statute has been so construed that an order affecting a substantial right, when made in a special proceeding, has been held to be appealable, even though it does not terminate the action, nor constitute a final disposition of the case. O'Brien v. O'Brien, 19 Neb. 584; In re Estate of Broehl, 93 Neb. 166."

As stated in Turpin v. Coates, 12 Neb. 321, 11 N. W. 300: "A special proceeding may be said to include every special statutory remedy which is not in itself an action." The present action is, in character, a provisional remedy created by statute directing the procedure to obtain relief in garnishment proceedings. Early v. Belgrade-Hord

Co., 133 Neb. 884, 277 N. W. 596. Upon that premise, it was concluded by this court that proceedings in garnishment were special proceedings. See, also, Adams County Bank v. Morgan, 26 Neb. 148, 41 N. W. 993. A fortiori, the case at bar was a special proceeding.

We turn then to the question whether or not the order here involved affected a substantial right. We conclude that it did. As a matter of fact, it concluded every factual issue between the parties and completely fixed their rights and liabilities, leaving nothing to be subsequently perfected except taxation of costs and the mere entry of a formal order making effective and enforceable the judgment already entered against defendant, dependent only upon the outcome of plaintiff's original action, the merits of which defendant is not here attempting to review.

In that regard, it was said in Turpin v. Coates, *supra,* and restated in Adams County Bank v. Morgan, *supra*: "Neither is it necessary to wait until final judgment before such order can be reviewed."

As stated in Clarke v. Nebraska Nat. Bank, 49 Neb. 800, 69 N. W. 104: "A substantial right is an essential legal right, not a mere technical one." That opinion also approved a statement appearing in State v. Security Savings & Trust Co., 28 Or. 410, 43 P. 162, to the effect that: "The law, as we understand it, is that an order or decree is final for the purposes of an appeal when it determines the rights of the parties, and no further questions can arise before the court rendering it except such as are necessary to be determined in carrying it into effect: * * *."

Under the evidence appearing in this record, and applicable law, as will hereinafter be observed, defendant was the agent of the Louisville bank, if it owned the proceeds of the draft or had the rights of an owner against prior and subsequent parties, of which plaintiff was one, as provided in section 62-202, R. S. 1943. It was not only authorized to follow the instructions of its

immediate forwarding bank, as provided in the foregoing section, but as agent, it was also charged with the duties inherent in that relationship, and had the right to protect itself against any liability then or thereafter asserted against it by reason of the proceedings and order here involved, which clearly affected a substantial right. First Wisconsin Nat. Bank v. People's Nat. Bank, 136 Va. 276, 118 S. E. 82, 36 A. L. R. 736, discusses at length the duties of a garnishee under circumstances similar to those at bar.

Also, in Restatement of the Law, Agency, § 426, p. 981, it is said: "The duties of an agent who has received goods or money for the principal depend upon the agreement between them. Unless otherwise agreed, the agent has a duty to use care to keep them safely until they are remitted or delivered to the principal, and to deliver them to the principal upon his demand when the amount due him has been ascertained. The agent may also have a duty to use care to notify the principal of the collection, or to remit the goods or money to him within a reasonable time."

Generally, an appealable interest in the subject matter exists whenever the interest of the party may be enlarged or diminished or his rights or liability affected by the result of the appeal, and if a party has sufficient interest to make him a party to an action, he has sufficient interest to appeal should the order or judgment be against him. 4 C. J. S., Appeal and Error, § 177, p. 349; 3 C. J., Appeal and Error, § 481, p. 625. It will be observed that plaintiff made defendant a party to the action, and as such it was legally entitled to a review of the proceedings. 2 Am. Jur., Appeal and Error, § 170, p. 955.

As a matter of fact, in a situation factually similar in many material respects, this court has concluded that it was a garnishee's right and duty to appeal for its own protection. Commercial State Bank of Genoa v. Rowley, 2 Neb. (Unoff.) 645, 89 N. W. 765.

For the reasons heretofore stated, the motion of plain-

tiff to dismiss the appeal should be and hereby is overruled at plaintiff's costs.

As the first premise for discussion of the merits, we turn to Cornish v. Russell, 32 Neb. 397, 49 N. W. 379, which was a cause of action under section 225 of the Civil Code, now section 25-1030, R. S. 1943. Therein, this court said: "This provision certainly means that in such a case, if it appear that the garnishee has money or credits of defendant in attachment in his hands, judgment may be rendered against him for the amount thereof, but he shall not be liable for costs unless his answer was incomplete. In other words, failure, on the part of plaintiff, to show that the answer of garnishee was incomplete, will not defeat the action against him if he has money of defendant in attachment in his possession; but does relieve him of liability for costs. This provision is entirely a nullity if this is not its meaning." Thus, it is apparent that whether or not defendant's original answer in garnishment was false and incomplete is not a jurisdictional element but important only in order to fix liability for costs.

It will be observed that only the answer of the garnishee was admissible in response to the garnishment process in the prior action, and that a judicial order upon such garnishee to turn over money or property of defendant therein could have been made only upon an unqualified admission by garnishee of a then-present indebtedness to such defendant or that it had money or property of the company in its possession, to which the company, as debtor, would be entitled but for the garnishment. Early v. Belgrade-Hord Co., *supra*. Also, when the discovery of money or property of a judgment debtor is sought through evidence from others than the garnishee, the remedy is provided by sections 25-1030 and 25-1031, R. S. 1943. The logic of that conclusion stems from the statute itself and the holding in Orchard & Wilhelm Co. v. North, 125 Neb. 723, 251 N. W. 895.

It was not the form but the substance of defendant's

original answer which plaintiff questioned. In that connection, it is generally the rule that a garnishee owes a duty to act in good faith and answer fully and truthfully all proper questions or interrogatories presented to him, or to in some appropriate manner make proper disclosure of all relevant facts within his knowledge at the time of making answer concerning his then-present indebtedness to the debtor or concerning money or property of the debtor then in his possession. 38 C. J. S., Garnishment, § 209, p. 447; 28 C. J., Garnishment, § 420, p. 287; Work v. Brown, 38 Neb. 498, 56 N. W. 1082. The record discloses that defendant performed that duty in every respect. Therefore, the trial court erred in finding that its answer was false and incomplete.

In an action such as that at bar, as in other civil cases, the burden of proof is generally to be determined from the issues presented by the pleadings, and such burden usually rests upon plaintiff and not upon the garnishee. In other words, the burden generally rests upon plaintiff to establish the facts essential to the liability of the garnishee. "Thus the burden rests on plaintiff to show a garnishable debt, the amount of the garnishee's indebtedness to defendant, and funds or property of the debtor in the garnishee's hands." In other words, "On a traverse of the garnishee's answer the burden rests on the plaintiff to show the falsity of the answer and to prove the indebtedness of the garnishee to the principal debtor and the garnishee's possession of funds or property of such debtor in contravention of the garnishee's denial of such matters." 38 C. J. S., Garnishment, § 228, p. 474. See, also, 28 C. J., Garnishment, § 465, p. 308, and § 466, p. 309. Plaintiff failed to meet that burden.

At the outset with reference to the first assignment, it should be said that in a case tried to the court, whether at law or in equity, the presumption obtains that the trial court, in arriving at a decision, considered such evidence only as was competent and relevant, and this court will not reverse a case so tried because other evi-

dence was admitted. See, Nelson v. Nelson, 133 Neb. 458, 275 N. W. 829, and Coffin v. Maitland, 146 Neb. 477, 20 N. W. 2d 310. In that regard, the general rules governing admissibility of evidence in civil cases control in cases such as that at bar, since, as provided in section 25-1030, R. S. 1943, pleadings are filed "as in other cases" and "such proceedings may be had as in other actions" except as specifically limited by section 25-1031, R. S. 1943.

In the light of the foregoing, we deem that specific separate discussion of the admissibility or inadmissibility of particular evidence assigned as erroneously admitted will not be necessary. Rather, in arriving at decision, we will give consideration only to such evidence as was competent and relevant to material elements hereinafter discussed.

It will be observed that this is not an action between the parties to the instrument for the purpose of determining ownership of the draft or its proceeds for any reason arising out of the transaction itself. Plaintiff here does not claim to be owner of the fund because of any lack of consideration or any defect in the transaction which gave rise to the draft or its proceeds. Plaintiff is not defending against the draft; the draft was paid by it. Plaintiff's cause of action was to impound the funds so paid as belonging to the company to satisfy an alleged claim against it arising out of an entirely different transaction. The company has not and does not now claim to own the proceeds. The validity of plaintiff's contentions depends entirely upon its ownership by the company. Defendant does not claim the proceeds as its own but seeks only protection of law in its ultimate disposition.

The trial court doubtless premised its conclusion that the company was owner of the proceeds in conformity with plaintiff's contentions that the draft was simply an item deposited with or received by the Louisville bank for collection, and that, as provided in the Bank Collection Code, section 62-202, R. S. 1943, such bank was not

the owner, but only agent of the depositor company for whom defendant was the subagent. In the ordinary case, not coming within any specific exceptions provided for in the statute, that conclusion would doubtless have merit. See State ex rel. Sorensen v. South Omaha State Bank, 129 Neb. 43, 260 N. W. 815. However, as will be hereinafter observed, the case at bar comes squarely within both the first and last exceptions contained in the statute, and upon either horn of the dilemma plaintiff cannot prevail.

Section 62-202, R. S. 1943, provides: *"Except as otherwise provided by agreement,* and except as to subsequent holders of a negotiable instrument payable to bearer or endorsed specially or in blank, where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection, and each subsequent collecting bank shall be subagent of the depositor *but shall be authorized to follow the instructions of its immediate forwarding bank;* and any credit given by any such agent or subagent bank therefor shall be revocable until such time as the proceeds are received in actual money or unconditioned credit given on the books of another bank, which such agent has requested or accepted. *Where any such bank allows any revocable credit for an item to be withdrawn, such agency relation shall nevertheless continue, except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn."* (Italics supplied reflect the applicable provision).

Under circumstances having a similarity in many material respects with the case at bar, the opinion in Martin v. Huber, 68 N. Y. S. 2d 53, recently said, in discussing the first exception appearing in the statute: "Plaintiff urges, however, that the bank became merely an agent for collection under the provisions of the Bank Collection Code. Rem. Rev. Stat. Wash. § 3292-2; see also N. Y. Negotiable Instruments Law, § 350-a. This statute states that 'except as otherwise provided by

agreement * * * where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for collection * * *.'

"Since the statute does not indicate any test of what facts will evidence an agreement to the contrary, the provision is subject to conflicting interpretations. See Lawton v. Lower Main Street Bank, 170 S. C. 334, 170 S. E. 469, and Farmers' Exchange Bank v. Farm & Home Sav. & Loan Ass'n, 332 Mo. 1041, 61 S. W. 2d 717. Hence, to determine whether there was an agreement that the bank should not be a mere agent for collection, we must look to the intention of the parties, which may be gathered from the form of indorsement on the paper itself, the right accorded to the depositor to draw unrestrictedly upon the funds credited to him in advance of collection, and the general course of dealing between the bank and the depositor (Wickens v. Scheuer, 118 Wash. 614, 204 P. 780; First Trust & Sav. Bank v. Kent, 6 Cir., 119 F. 2d 151).

"A printed provision on the back of the deposit slip stating that all items are accepted for collection only is not controlling. Such a provision is subject to a contrary agreement between the parties as evidenced by their conduct, and as it is a rule adopted solely for the benefit of the bank, it may be waived by honoring checks against uncollected deposits (Pearson v. Brennan, 1 Cir., 75 F. 2d 958; Colorado National Bank of Denver v. Newton, 10 Cir., 80 F. 2d 696)."

The last exception provided in section 62-202, R. S. 1943, is clear and unambiguous, requiring but a factual application thereto. Its application was discussed at length in Farmers' Exchange Bank v. Farm & Home Sav. & Loan Assn., 332 Mo. 1041, 61 S. W. 2d 717.

In the light of the foregoing rules, we will briefly summarize the material evidence which is either admitted or uncontradicted, except by inference upon inference, or mere guess, speculation, and conjecture.

Under date of September 20, 1946, the company drew a

sight draft for $19,374.35, payable to itself upon the account of plaintiff. Attached thereto was an invoice dated September 21, 1946, in the same amount, for a carload of aluminum sheets sold and shipped by the company to plaintiff, terms sight draft, together with a bill of lading covering the shipment. On September 23, 1946, the sight draft was endorsed in blank, "Metal Manuf Corp Wm Zoe President," and delivered to the Louisville bank, together with the invoice and bill of lading attached thereto.

Uncontradicted oral evidence, conclusively supported by the Louisville bank records and other credible documentary evidence; some of which was offered by plaintiff, show that the draft was thus presented to and received by that bank on September 23, 1946, not as a deposit in the regular course of business, but as owner, through its discount department, and that unconditional credit for $19,374.35 passed to the company upon a form in general use in that department of the bank. The credit was on the same day transferred to the ledger sheet of the company's account as an unconditional credit not subject to the conditions appearing in the front of the company's regular deposit book, on which checks or drafts were ordinarily received for deposit by the bank in the usual course of business. At the same time, upon receipt in like manner of the company's demand due note, dated September 23, 1946, evidently secured by a sight draft dated September 20, 1946, with invoice and bill of lading attached for the sum of $13,690.57, credit was also given the company for that amount, and such draft, with invoice and bill of lading attached, was also forwarded by the Louisville bank to defendant for collection. It will be noted that the sum of $19,374.35, plus $13,690.57, total exactly $33,064.92. Thereupon, as requested, the Louisville bank gave to the company in exchange therefor, its cashier check for that total sum of $33,064.92, payable to the Reynolds Metal Company, a creditor of the company.

A photostatic copy of the cashier's check appears in the record, dated September 23, 1946, bearing Reynolds Metals Company's endorsement, and marked "Paid 9.27.46."

The draft for $13,690.57 was paid by plaintiff on September 30, 1946, and remitted to the Louisville bank by defendant before the garnishment proceedings were instituted, and on October 2, 1946, the bank by letter, among other things, credited the company's account therefor, and at the same time charged the same back in payment of the company's demand due note dated September 23, 1946, and cancelled and returned it to the company. Another demand due note and draft for $9,817.67, with invoice and bill of lading attached, all dated September 24, 1946, on which date the company received credit therefor, was also handled, collected, remitted, and ultimately credited and charged back in like manner.

It will be observed, contrary to plaintiff's contentions, that the items heretofore and hereinafter discussed were not merely bookkeeping transactions. The Louisville bank's ledger sheet shows, without dispute, that at the close of business on September 21, 1946, the company had a balance of $61,846.23, and that on September 23, 1946, after crediting the company with $19,374.35 and $13,690.57, it had a total credit of those three amounts, or $94,911.15. The ledger reflects that on September 23, 1946, the sum of $101,505.13 was withdrawn, which, on that date, left an overdraft of $6,593.98. It therefore appears, without question, that the entire credit of $19,374.35 was withdrawn on that date, and, as provided in section 62-202, R. S. 1943, the Louisville bank had "all the rights of an owner thereof" against plaintiff.

We find no mathematical flaw or other indication that there was any fabrication of the bank's ledger in any manner, or that the company's account was ever

charged back with the proceeds here involved. Admittedly it was not.

It is conceded that on October 9, 1946, William Zoe, individually, and not as an officer of the company, delivered collateral to the Louisville bank upon condition that it be held to protect such bank against loss of the proceeds of the draft if they should be lost, by reason of the attachment and garnishment in the prior case entitled Western Smelting & Refining Company v. Metal Manufacturing Corporation and the First National Bank of Louisville, Kentucky. However, since the company endorsed the draft in blank as payee, and as such was considered liable thereon as endorser at all times in any event, we deem the foregoing of little consequence in controlling decision.

Admittedly, on September 23, 1946, the Louisville bank endorsed the draft "PAY TO THE ORDER OF ANY BANK OR BANKER ALL PRIOR ENDORSEMENTS GUARANTEED," and forwarded it, with invoice and bill of lading attached to defendant, with printed instructions, the original of which recited, among other things: "WE ENCLOSE FOR COLLECTION AND RETURNS ONLY WHEN PAID NO PROTEST UNLESS OTHERWISE INSTRUCTED * * * DELIVER DOCUMENTS ONLY ON PAYMENT OF DRAFT ATTACHED. DO NOT HOLD FOR CONVENIENCE OF PARTIES UNLESS OTHERWISE INSTRUCTED. IF UNPAID RETURN AT ONCE STATING REASON FOR NON-PAYMENT." Also, across the face, in the upper left-hand corner, appeared the typewritten notation: "Notify Disc. Dept." Also, like instructions were sent to defendant with both the $13,690.57 draft and the $9,817.67 draft, except that across the face of the first original appeared the typewritten notation: "Notify Disc. Dept.", and across the face of the last original appeared the typewritten notation: "Give chk. to Disc. Dept." Such typewritten

words were all generally overlooked by counsel for plaintiff in brief and argument.

The draft here involved was not paid upon presentation, but on October 2, 1946, after deduction of a freight item by telegraphic permission of the Louisville bank, which resulted from negotiations between plaintiff, the company, defendant, and the Louisville bank, plaintiff paid the draft, whereupon it immediately attached the proceeds paid by it before remittance thereof could be made to the Louisville bank.

In the light of the foregoing evidence, and under the law heretofore set forth, we conclude that the order and judgment of the trial court was not sustained by any competent evidence; and that being clearly wrong, it should be and hereby is reversed and the cause remanded at plaintiff's costs.

REVERSED AND REMANDED.